IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 23-13670-J

United States of America and The State of Florida *ex rel*. Robert V. Smith,

Appellants,

v.

Jay A. Odom and Okaloosa County, Board of County Commissioners,

Appellees.

Appeal from the United States District Court for the
Northern District of Florida, Pensacola Division
No. 3:20-cv-03678/MCR/ZCB

---

**APPELLANTS, UNITED STATES OF AMERICA
AND THE STATE OF FLORIDA *ex rel*.
ROBERT V. SMITH'S REPLY BRIEF**

---

CLARK PARTINGTON
ELIZABETH C. BILLHIMER, ESQ.
Florida Bar No. 121986
4100 Legendary Drive, Suite 200
Destin, Florida  32541
Telephone:  (850) 269-8853
Facsimile:  (850) 650-3305
*Attorneys for Appellants, United States of America
and The State of Florida ex rel. Robert V. Smith*

Case No. 23-13670-J

United States of America ex rel. Smith, et. al. v. Odom, et al.

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1 and 11th Circuit Rule 26.1-4, Appellants, United States of America and The State of Florida *ex rel.* Robert V. Smith ("Smith") file this Certificate of Interested Persons and Corporate Disclosure Statement.

I.    <u>Disclosure Pursuant to L.R.A.P. 26.1-1:</u>

A.    Beard, Esq., Amelia Hallenberg

B.    Billhimer, Esq., Elizabeth C.

C.    Bolitho, The Honorable Zachary C.

D.    Boyles, Commissioner Nathan

E.    Goodwin, Commissioner Trey

F.    Gordon, III, Esq., A. Benjamin

G.    Hoshihara, Esq., Lynn M.

H.    Hunt, Esq., Nathaniel H.

I.    Izzo, Esq., Anne Nicole

J.    Ketchel, Commissioner Carolyn

K.    Kirsch, Esq., Peter J.

L.    Knight, Esq., Christopher A.

M.    Mixon, Commissioner Paul

Case No. 23-13670-J
United States of America ex rel. Smith, et. al. v. Odom, et al.

N.   Odom, Jay A.

O.   Okaloosa County Board of County Commissioners

P.   Okaloosa County, Florida

Q.   Parsons, Esq., Kerry A.

R.   Patronis, Jimmy – FL Dept. of Financial Services CFO

S.   Ponder, Commissioner Mel

T.   Rodgers, The Honorable M. Casey

U.   Schofield, Esq., Michael J.

V.   Shaud, Esq., Matthew Reed

W.   Smith, Robert V.

X.   Sobotkin, Esq., David M.

Y.   State of Florida, The

Z.   Stewart, Esq., Gregory T.

AA.  United States of America

BB.  Wilbanks, Esq., Sarah

**II.   Disclosure Pursuant to F.R.A.P. 26.1 (Parent Corporation and Publicly Held Corporations that Own 10% or More of Appellee's Stock):**

A.   None.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...............................................................................C-1

TABLE OF CONTENTS............................................................................................ i

TABLE OF CITATIONS .......................................................................................... ii

ARGUMENT .............................................................................................................1

I.      False Representations as to Grant Assurance Compliance Were
        Material to Government Payment Decisions...................................................2

        a.      Grant Assurances are a Condition of FAA's Grant Payments..............4

        b.      Misrepresentations of Grant Compliance Go to Essence of the
                Bargain ................................................................................................8

        c.      FAA Did Not Have Knowledge of Grant Assurance Violations ........10

II.     The Amended Complaint Alleges Fraud with Particularity..........................14

III.    The Complaint is Not Barred by Public Disclosure. ....................................17

IV.     Amendment is Not Futile ..............................................................................24

CERTIFICATE OF COMPLIANCE AS TO WORD COUNT .............................25

CERTIFICATE OF SERVICE ...............................................................................25

## <u>TABLE OF CITATIONS</u>

**Cases**                                                                                         **Page**

*Aircraft Owners and Pilots Association v. Port Authority of New York*, 305
    F. Supp. 93 (E.D.N.Y.1969) ............................................................................5

*Boca Airport, Inc. v.* FAA, 389 F.3d 185 (D.C. Cir. 2004) .......................................9

*City of Pompano Beach v. F.A.A.*, 774 F.2d 1529 (11th Cir. 1985) .................... 5, 9

*Cooper v. Blue Cross and Blue Shield,* 19 F.3d 562, 567–68 (11th Cir.1994)  16, 17

*Palm Beach Cnty. v. Fed. Aviation Adm'r*, 53 F.4th 1318, 1327 (11th Cir.
    2022 ................................................................................................... 21, 22

*Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1168 (9th Cir. 2024) ......24

*Skydance Helicopters, Inc. v. Sedona-Oak Creek Airport Auth*., No. 16-02-
    02, Director's Determination (Mar. 7, 2003) ...................................................6

*Timberview Helicopters, Inc. v. Okaloosa County, Florida*, FAA Docket No.
    16-21-14 (Feb. 21, 2023) ...................................................................... 6, 7, 14

*United States ex rel. Bibby v. Mortg. Inv'rs Corp.*, 987 F.3d 1340 (11th Cir.
    2021). ................................................................................................... 4, 6, 8

*United States ex rel. Harman v. Trinity Indus. Inc*., 872 F.3d 645 (5th Cir.
    2017) ...............................................................................................................10

*United States ex rel. McBride v. Halliburton Co*., 848 F.3d 1027 (D.C. Cir.
    2017) ...............................................................................................................10

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645
    (D.C. Cir. 1994) ..................................................................................... 19, 20

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176,
    (2016)........................................................................................ 3. 5, 8, 12, 13

*Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288 (11th Cir. 2021) ............................................................................................... 4, 8

**Statutes**

31 U.S.C. § 3730, et seq. ....................................................... 19, 20, 22, 23

49 U.S.C. § 40103 ...............................................................................4, 14

49 U.S.C. § 47107 ...................................................................... 4, 5, 14, 15

49 U.S.C. § 47115 ................................................................................7

**Rules**

Federal Rule of Civil Procedure 9(b) ........................................................15

**Treatises**

FAA Airport Compliance Manual 5190.6B, 86 FR 68719 ............................. passim

# ARGUMENT

The Complaint alleges fraudulent schemes at a federally funded airport across at least four different time periods involving different actors that resulted in violations of federal statutes, regulations and grant assurances.  The exclusive rights violations are ongoing and currently exist at DTS.  Okaloosa County, as an airport sponsor at DTS Airport, received millions of dollars in state and federal funding predicated on knowingly false and fraudulent statements made on grant applications disclaiming knowledge of exclusive rights created and existing at DTS in violation of federal law.

The District Court erred in dismissing Appellants' Amended Complaint ("Complaint").  The facts disclosed in news media cited by the District Court do not compel dismissal where the Complaint alleges a series of fraudulent schemes across various time periods and involving various actors that were not publicly disclosed.  Moreover, Mr. Smith was the original source of the allegations in the Complaint.  In addition, the claims in the Complaint, which spans more than 170 paragraphs, are plead with requisite particularity.

Even though the District Court expressly stated that it did not dismiss based on materiality, Appellees nonetheless raise this issue in its Response.[1]  The false

---

[1] Appellant does not address the additional issues raised by Appellee below but not in this appeal, including statute of limitations and public disclosure of Florida law claims.  Those issues were fully briefed below (Doc. 68) but not relied on by the

representations made or caused to be made by Appellees were material to Government payment decisions. In particular, approval of grant funding is based on certifications of full and ongoing compliance with applicable federal statutes, regulations and grant assurances. Okaloosa County understands this because the FAA recently held in another case involving DTS that grant assurance violations have a direct impact on approval for grant funding.

## I.    False Representations as to Grant Assurance Compliance Were Material to Government Payment Decisions

Appellant sufficiently plead materiality and the lower court specifically held that its "order of dismissal did not question the materiality of the grant assurances." Doc. 80 at p. 5, n.3.

Appellees inaccurately allege that the Complaint alleged no facts to support the allegation that Appellees' false and fraudulent information was material to the receipt of both Federal and State funds. On the contrary, the Complaint is replete with allegations regarding how Appellees' fraudulent conduct and false statements influenced the government's decision to pay.

As detailed in the Complaint, airport sponsors at federally funded airports are prohibited by multiple federal statutes from establishing exclusive rights. Doc. 33

---

District Court as a basis for dismissal. To the extent the Court considers those issues, Appellant relies on the arguments below. (Doc. 68).

at ¶¶ 2-72.  The Complaint properly alleged noncompliance with multiple applicable federal statutes that prohibit exclusive rights, and also alleged that the FAA was not requested to render a decision regarding exclusive rights at DTS and was not informed of all applicable facts and circumstances at DTS that would have allowed the FAA to recognize ongoing exclusive rights violations.  *See*, *e.g.*, Doc. 33 at ¶¶ 23-100.  The Complaint also details how Okaloosa County withheld critical information from the FAA regarding the true circumstances at DTS Airport, including that it had allowed and perpetuated Odom's exclusive right in violation of federal law and regulations.  Doc. 33 at ¶¶ 119, 121.  The Complaint further alleges that Okaloosa County certified on each of its Applications for Federal Assistance and FAA Form 5100-100 that "[t]here is no grant of an exclusive right for conduct of any aeronautical activity at any airport owned or controlled by the Sponsor . . ." *See* Doc. 33 at ¶ 8.

The assessment of materiality requires consideration of multiple factors, but neither Appellees nor the District Court addressed application of these factors.  The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016).  The materiality element seeks to limit the scope of FCA liability to claims for which the government "would have attached importance to the violation in determining whether to pay the

claim." *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1300 (11th Cir. 2021). Here, as we see in other FAA cases, exclusive rights are highly important to the FAA and result in suspense of payment of grant funds until the improper exclusive rights are eliminated.

No single factor is dispositive of materiality; relevant factors include: (1) whether the requirement is a condition of government payment, (2) whether misrepresentations went to the essence of the bargain, and (3) to the extent the government had actual knowledge of misrepresentations, the effect on the government's behavior." *United States ex rel. Bibby v. Mortg. Inv'rs Corp.*, 987 F.3d 1340, 1347 (11th Cir. 2021).

### a.    Grant Assurances are a Condition of FAA's Grant Payments

"[T]he Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive" to the materiality analysis. *Mortg. Invs. Corp.*, 987 F.3d at 1347. Since 1938, there has been a statutory prohibition on exclusive rights: 49 U.S.C. §40103(e), which is independent of the parallel grant assurance requirement at 49 U.S.C. §47107(a)(4) ("A person does not have an exclusive right to use an air navigation facility on which Government money has been expended.").

The term "exclusive right" was "intended to describe a power, privilege, or other right excluding or debarring another or others from enjoying or exercising a

4

like power, privilege, or right." *City of Pompano Beach v. F.A.A.*, 774 F.2d 1529, 1542 (11th Cir. 1985). "The type of exclusive right prohibited by section 1349(a) has been described as 'one of the sort noxious to the anti-trust laws.'" *Id.* (citing *Aircraft Owners and Pilots Association v. Port Authority of New York*, 305 F. Supp. 93, 105 (E.D.N.Y.1969)).

For approval of grants, the Secretary of Transportation, by statute, requires written assurances that exclusive rights will not be given at airports. 49 U.S.C. § 47107. "Upon acceptance of an AIP grant, the assurances become a binding contractual obligation between the airport sponsor and the federal government." Doc. 71-5 (FAA Manual §1.9).

Appellees knew the FAA would refuse to pay grant funds based on noncompliance with the prohibition on exclusive rights. *See Escobar*, 579 U.S. at 194-195 ("[P]roof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement.").

The FAA Manual makes clear that, if an exclusive right exists and no matter how it was created, the FAA will not award a sponsor an AIP grant until the exclusive right is removed from the airport. Doc. 71-5 (FAA Manual §§ 8.4d; 8.11.b). Appellees cannot argue they were not aware of the importance of the

exclusive rights grant assurances since they sought enforcement of those very same grant assurances when Appellees sued the City of Destin to reverse denial of Odom's application to establish a second FBO at DTS. Doc. 33 at ¶ 51, n.2.

Federal law and regulations designate exclusive right grant assurances as a condition of grant award and payment. *See Mortg. Invs. Corp.*, 987 F.3d at 1347 ("The relevant VA regulation clearly designates that requirement a condition to payment. . . . [and] weighs in favor of materiality."); *Skydance Helicopters, Inc. v. Sedona-Oak Creek Airport Auth.*, No. 16-02-02, Director's Determination (Mar. 7, 2003) (holding violation of grant obligations will result in withholding of grant funds without corrective action). Appellee did not dispute in proceedings below that grant assurances are a condition of acceptance and payment of grants. Therefore, this factor weighs in favor of materiality.

Importantly, the FAA recently decided *Timberview Helicopters, Inc. v. Okaloosa County, Florida*, FAA Docket No. 16-21-14 (Feb. 21, 2023). Notably, *Timberview* involves Okaloosa County and the same airport at issue in this case and is directly contrary to Appellees' position in this case.

In Okaloosa County's Memorandum of Law submitted in *Timberview,* the County described numerous communications with the FAA resulting in investigations. The County stated: "Further, the County has exercised its authority under Assurance 22(h) to address safety issues, subject to a final determination by

the FAA." Okaloosa County also described "subsequent conference calls" attended by "over a dozen FAA employees."

Notwithstanding, the FAA Director found Okaloosa County in violation of Grant Assurance 22, even though the County had multiple discussions with the FAA regarding Timberview over several years. In other words and as the FAA correctly decided, communications with the FAA alone are not enough to avoid a grant assurance violation. Like here, context and content of the communications with the FAA matter.

Moreover, the FAA's ruling in *Timberview* further demonstrates the materiality of grant assurance violations because the FAA will not approve any grant funding applications until grant assurance violations are corrected. In particular, the FAA held:

> We find that Okaloosa County, Florida, is in violation of its Federal obligations regarding Grant Assurance 22, Economic Nondiscrimination, as set forth in its airport grant assurances and existing Federal statutes.
> * * * * *
> Pending the FAA's approval of a corrective action plan, this office will recommend to the Director, Office of Airport Planning and Programming (APP-1), to withhold approval of any applications submitted by Okaloosa County for discretionary funding for projects authorized under 49 U.S.C. § 47115.

In the face of this FAA ruling, it is disingenuous for Okaloosa County to now argue to this Court that grant assurance violations are not material when Okaloosa

County has personal knowledge that the FAA has already determined that grant assurance violations are directly tied to the approval of grant funding.

Separately, as noted in his recently filed Notice of Related Case (USCA Doc. 24), Mr. Smith filed a Part 16 Complaint with the FAA against Okaloosa County regarding the ongoing exclusive rights violations and other statutory and regulatory violations at DTS. The FAA has docketed the Mr. Smith's Complaint and Okaloosa County is required to answer by March 22, 2024 (which is a mutually agreed, extended deadline).

Appellee did not dispute in proceedings below that grant assurances are a condition of acceptance and payment of grants. Therefore, this factor weighs in favor of materiality.

### b. Misrepresentations of Grant Compliance Go to Essence of the Bargain

"[O]ne factor in the materiality inquiry is whether the requirement at issue goes to the essence of the bargain with the government—i.e., whether the requirement is a central part of the regulatory program." *Pinellas Hematology & Oncology, P.A.*, 21 F.4th at 1301; *Mortg. Invs. Corp.*, 987 F.3d at 1347–48 (considering extent to which requirement "violated is central to, or goes 'to the very essence of[,] the bargain.'")); *see also Escobar II*, 842 F.3d at 110 (considering the centrality of the…requirements in the context of the regulatory program).

8

"The exclusive rights provision is the oldest federal obligation affecting federally funded airports." Doc. 71-5 (FAA Manual §8.3b). "[T]he FAA deems that the grant of an exclusive right at any airport upon which federal funds has been expended is contrary to applicable federal law." *City of Pompano Beach v. F.A.A.*, 774 F.2d 1529, 1542 (11th Cir. 1985); *Boca Airport, Inc. v.* FAA, 389 F.3d 185 (D.C. Cir. 2004) (discussing Grant Assurance 23, prohibition on exclusive rights and failure to end exclusive right rendering airport ineligible for FAA grants); FAA Manual §8.3c. (Title 49 contains prohibition against exclusive rights in three locations).  As agency policy, "[t]he FAA considers it inappropriate to provide federal funds for improvements to airports where the benefits of such improvements will not be fully realized by all users due to the inherent restrictions of an exclusive monopoly on aeronautical activities."  Doc. 71-5 (FAA Manual §8.4).  The obligations under Grant Assurance 23, Exclusive Rights continue without limit as long as the airport is used as a public use airport.  Doc. 71-5 (FAA Manual §4.6).

Here, the misrepresentations as to grant assurance compliance go to the very essence of the bargain.  Federal law does not allow the creation of exclusive rights. *City of Pompano Beach*, 774 F.2d at 1542 (prohibited exclusive right described as "one of the sort noxious to the anti-trust laws"); Doc. 71-5 (FAA Manual §8.4) (Federal statutory law prohibits sponsors from granting exclusive right).

Appellees did not dispute below that false representations as to exclusive right grant assurances go to the essence of the bargain. Therefore, this factor weighs in favor of materiality.

> ### c.  FAA Did Not Have Knowledge of Grant Assurance Violations

*Escobar* does not distinguish between inadvertent mistakes and intentional violations. What matters is simply whether the government knew "that certain requirements were violated." *Mortg. Invs. Corp.*, 987 F.3d at 1349–50; *see United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1034 (D.C. Cir. 2017) (explaining analysis is focused on "what actually occurred" rather than on testimony that hypothesizes what might have occurred). "Assessing the government's actual knowledge requires that we drill down to when that knowledge was acquired, and what exactly the government learned." *Mortg. Invs. Corp.*, 987 F.3d at 1348 (citing *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 668 (5th Cir. 2017)) (finding no materiality as a matter of law only after determining there was "no question about 'what the government knew and when'"). Here, there are still many questions about what the government actually knew and when it knew that preclude a finding of no materiality.

Appellees cite various cases for the proposition that continued payments by the Government after learning of alleged false statements are evidence the alleged

falsehood was not material.  As alleged in the Complaint, however, Appellees never disclosed the true facts and circumstances to the FAA.  Doc. 33 at ¶¶ 119, 121.

As alleged, Okaloosa County reported to the FAA around September 2014 that Odom advised that Destin Jet had acquired ownership in Regal Air without the consent or approval of Okaloosa County and asked if the acquisition would result in Okaloosa County being in violation of its Grant Assurances 5 and 23.  Doc. 33 at ¶ 77.

Allegations regarding the FAA's response to the County's inquiry appear in paragraphs 78-79 of the Complaint.  Doc. 33.  The FAA provided general information about the nature of federal compliance obligations and recommended the County review the lease agreement with its attorney to determine if Odom's actions constituted a breach of the lease. The FAA cautioned the County about issues related to exclusive rights.  The FAA then suggested that the County obtain a legal opinion from the FAA Office of General Counsel.  Doc. 33 at ¶ 79.

Appellees argue that this partial disclosure of information to the FAA renders the grant assurances immaterial because the government "knowingly" continued to pay funds.  On the contrary, as alleged in the Complaint, Okaloosa County never obtained a legal opinion from the FAA Office of General Counsel as recommended by the FAA.  Doc. 33 at ¶80.  As a result, the FAA did not obtain additional information about the true facts and circumstances surrounding Destin Jet's acquired

ownership in Regal Air to assess whether an exclusive right was created. Moreover, Okaloosa County intentionally did not make the FAA aware of how it ultimately handled the disclosure by Odom that Destin Jet had acquired an ownership interest in Regal Air without consent or approval of the County. Okaloosa County also did not tell the FAA it allowed Odom to obtain exclusive control of both FBOs at DTS and no other land was available on the airport for a third FBO. Thus, the FAA could not and did not know "that certain requirements were violated." *Escobar*, 579 U.S. at 195.

The FAA also was never apprised that Okaloosa County allowed Odom to extend the lease terms with both FBOs and continued to allow Odom and his successors a monopoly for decades to come. Doc. 33 at ¶¶ 75, 87. Moreover, the FAA was never apprised that another aeronautical service provider was denied an opportunity to lease an existing FBO or to develop a new FBO at DTS. Doc. 33 at ¶¶ 91-93. In addition, the FAA was never made aware of Odom's actions in using strawmen Simmons and Ward to acquire Miracle Aviation in 2012. As a result, it cannot be said that the government "knowingly" continued to pay funds when it did not know a majority of the relevant facts necessary to conclude grant assurance violations.

Appellees below argued that the FAA was fully aware an "exclusive right" issue *could arise in the future* but continued to bestow grants even with this

knowledge. Doc. 56 at pg. 24. With regard to materiality, the focus is whether the government knew "certain requirements were violated," (*Escobar*, 579 U.S. at 195), not whether violations could arise in the future.

There are sufficient allegations and evidence to support a finding of materiality, where the grant assurances are a condition of payment, required by federal statute, and a central part of the FAA's regulatory program, but where there is insufficient evidence the government had actual knowledge of violations but continued to award and pay grants to DTS. *See Mortg. Invs. Corp.*, 987 F.3d at 1351 ("And even if we viewed the VA's continued issuance of guaranties as "strong evidence" of immateriality . . . . [a] factfinder would still have to weigh that factor against others, including, as relevant here, the fee and charges requirement being a condition to payment and essential to the IRRRL program.").

Appellees allege that citation in the Complaint to an FAA document indicating that the FAA does not approve leases is purported "strong evidence" that false certifications are not material to an FAA decision to make grants. Tellingly, however, Appellees omit the remainder of the sentence that debunks Appellees' assertion: "however FAA policy is equally clear that the creation or continuance of an "Exclusive Right" at an airport that has received or will receive federal funds is prohibited." Doc. 33 at ¶ 97. In order words, FAA policy is clear that false

certifications as to exclusive rights violations are material to an FAA decision to make grants.

In sum, grant assurance violations, liked those alleged here, are material. Moreover, as the FAA held in *Timberview*, informal communications with the FAA, absent a formal determination, will not excuse Appellees' creation of an impermissible exclusive rights that violate federal statutes.

## II.    The Amended Complaint Alleges Fraud with Particularity

Appellees argue inaccurately that the Complaint only cites 49 U.S.C. § 47107(a)(4) as the statutory provision violated.  As the Complaint and Appellant's opening brief make clear, the Complaint alleges violations of multiple federal statutes, including 49 U.S.C. §47107 and 49 U.S.C. § 40103, various grant assurances mandated by federal law, and FAA regulations, including FAA Order 5190.6B, *Airport Compliance Manual* (FAA Order 5190.6B), issued on September 30, 2009, that provides the policies and procedures to be followed by the FAA in carrying out its legislatively mandated functions related to the federally obligated airport owners' compliance with their sponsor assurances.  Notwithstanding, the District Court improperly analyzed only one applicable federal statute, 49 U.S.C. ¶ 47107, to the exclusion of the other federal statutes and regulations cited in the Complaint, because it appeared to be the more specific airport improvement grant statute.  Doc. 76.  Moreover, in its Order Denying Mr. Smith's Motion to Amend the

Order of Dismissal, the District Court noted the possibility of error in its determination that the Amended Complaint lacked sufficient particularity under Federal Rule of Civil Procedure 9(b). Doc. 80 at p.6.

Similarly, in this appeal, Appellees argue that only 49 U.S.C. ¶ 47107 applies, to the exclusion of the other federal statutory provisions, regulations, including the FAA Compliance Manual, and the plain language of the grant assurances, all of which were cited in the Complaint.

Contrary to Appellees' assertion, the Complaint alleges the County certified compliance with its grant assurances while knowing it had granted Odom special privileges and exclusive rights to the detriment of Relator and the public. Doc. 33 at ¶¶ 8, 9, 75, 82, 87, 89, 90, 93, 98, 117, 119, 121, 123-26. Specifically, Odom and his successors were granted full control of two FBOs to the exclusion of everyone else. Doc. 33 at ¶¶ 7, 5, 82, 87, 89, 90, 93, 98, 124-26. The Complaint further alleges that the monopoly Odom created and Okaloosa County allowed enabled him to raise fuel and service prices to the airports customers. Doc. 33 at ¶¶ 8, 56, 76. Okaloosa County also improperly allowed Odom to extend the lease term of one of the FBO leases. Doc. 33 at ¶¶ 75, 124.

Okaloosa County advances an unsupported argument that the Complaint does not allege that DTS "gave an exclusive right to anyone" and only alleges that the County "approved the acquisition of another provider." On the contrary, the

Complaint alleges Okaloosa County took actions or failed to act, resulting in federal

law exclusive rights violations and various false grant assurance certifications.

The attempt by Okaloosa County to parse exclusive rights is contrary to law.

The cited federal statutes and the FAA Compliance Manual are crystal clear:

> FAA policy **prohibits the creation or continuance of exclusive rights**
> **agreements** at obligated airports where the airport sponsor has received
> federal airport development assistance for the airport's improvement or
> development. **This prohibition applies regardless of how the**
> **exclusive right was created**, whether by express agreement or the
> imposition of unreasonable minimum standards and/or requirements
> (inadvertent or otherwise).

Doc. 71-5 (emphasis added).

Moreover, as provided in the FAA Compliance Manual: "The obligations

under Grant Assurance 23, Exclusive Rights continue without limit as long as the

airport is used as a public use airport." Doc. 71-5 (FAA Manual §4.6).  In other

words, Okaloosa County had and still has an obligation to dismantle the improper

exclusive rights that exist at DTS.  Notwithstanding, Okaloosa County allows an

improper monopoly at DTS in violation of federal law.

To satisfy the heightened-pleading standard in an FCA case, the Relator has

to allege "facts as to time, place, and substance of the defendant's alleged fraud,"

particularly, "the details of the defendants' allegedly fraudulent acts, when they

occurred, and who engaged in them." *Id.* (emphasis added) (quoting *Cooper v. Blue*

*Cross and Blue Shield,* 19 F.3d 562, 567–68 (11th Cir.1994)) (internal quotation

marks omitted).  Even setting aside allegations made "on information and belief, the Complaint more than adequately complies with this standard.  Relator was not required to detail in the Complaint the names of all of his sources; all of that information will come out during discovery.

Moreover, the allegations in the Complaint are made with the necessary indicia of reliability.  The Complaint provides specific allegations regarding the actual false claims that were submitted for payment, including dates and amounts. Appellees do not contest that the grants identified in the Complaint were not actually submitted and paid.  Moreover, the Complaint specifically identifies the violations engaged in by Appellees, citing specific facts leading to federal statutory and regulatory violations.

Appellees focus on Mr. Smith as a "corporate outsider" is without merit.  The FCA does not provide that only "corporate insiders" can file *qui tam* cases.  Indeed, as discussed below, the 2010 Amendments to the FCA changed the requirement that Relator possess "direct knowledge" of FCA violations.

### III.    The Complaint is Not Barred by Public Disclosure.

It is undisputed that the Complaint alleges fraudulent schemes in various time periods that were not disclosed in the news media cited by Appellees.  The Complaint alleges fraudulent schemes in at least four different time periods, each of which involved different actors and different actions by the County:

| Time Period | Description |
|---|---|
| 2012-2013 | Fraudulent scheme to create and maintain monopoly/exclusive rights involving Odom, Ward, Simmons. |
| 2013 | Fraudulent scheme to maintain monopoly/exclusive rights involving Odom, Kroeger, Edwards. |
| 2014 | Fraudulent scheme to maintain monopoly/exclusive rights involving Odom, Kroeger, Edwards, the County. |
| After 2015 and ongoing | Fraudulent scheme to maintain monopoly/exclusive rights involving Odom, the County, and third party successors of Odom. |

The Complaint also alleges different transactions that occurred in each of the various time periods at issue that were not publicly disclosed. As a result, those transactions are not barred by public disclosure.

The earlier fraudulent scheme detailed in the Complaint where Odom covertly used strawmen Ward and Simmons in 2012 to take over Miracle Strip Aviation was not publicly disclosed in the news media cited by Appellees. Absent the information provided by Relator, this fraudulent scheme would not have been discovered.

Moreover, the news media articles pre-date the allegations of false claims created as a result of the County allowing Odom to merge the FBOs and operate as a monopoly. At the time of the articles, the County had not yet sanctioned Odom's common ownership and branding of the FBOs. In addition, at the time of the articles, the County had not yet sanctioned the continuation of the monopoly control over the two FBO locations by one entity when Odom sold his exclusive rights to another

18

single entity.  As a result, Relator's allegations in that regard could not have been publicly disclosed through the news articles.  In addition, Relator has disclosed the ongoing existence of exclusive rights violations, which were not disclosed in any news media.

There are 173 paragraphs in the Complaint.  Appellees Response Brief cites to only portions of 7 paragraphs in the Complaint as being previously publicly disclosed.  Accordingly, it cannot be said that there is significant overlap between Relator's allegations and alleged public disclosure.

Moreover, only limited facts are in the public domain, but those facts do not constitute "allegations" under *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994). Moreover, those limited facts do not allow the conclusion that a fraud has occurred. Relator also brought forth additional elements necessary to state a case for fraud and allegations of fraud itself.  As a result, the public disclosure bar does not apply.

Appellees do not address the *Springfield* formula.  Rather, Appellees erroneously argue that any facts in the public domain that may also appear in the Complaint (Doc. 33) automatically invoke the public disclosure bar.

Relator's Complaint alleges a chronology of various schemes by Odom and the County in violation of 31 U.S.C. § 3730, et seq. (the "False Claims Act"). The schemes involved different parties and occurred at different times.  Moreover, each

Count in the Complaint is broken down based on the time period and parties involved.

In its comparisons of news articles and allegations in the Complaint, Appellees improperly cite to a 2015 County Agenda Request. Doc. 57. Although Appellees sought judicial notice of this document, Appellant objected and the document was not considered by the District Court. Doc. 76 at pg. 2, n2. The basis for the objection is the County Agenda Request does not fit within any of the defined statutory channels that qualifies as a public disclosure bar. Accordingly, Appellees should not have referenced the County Agenda Request.

Certain facts appear in the March 29, 2014 article cited by Appellees, "*Turbulence at Destin Airport*," that pertain to DTS. Doc. 57-1. Notwithstanding, there were no "allegations of fraud" as defined under *Springfield*. In the article, Odom denied holding any interest in Regal Air. *Id*. Moreover, the airport representative said "[i]f he [Odom] has acquired ownership of Regal Air, the first thing he needs to do is admit that" and "acknowledging that Odom has yet to formally document takeover of Regal Air."

The article went on to state: "Last year, a company associated with Destin Jet owner Jay Odom bought out the competition at Destin Airport." This reference, however, was not to the earlier, covert take over by Ward and Simmons of Miracle

Strip Aviation as alleged in the Complaint, but only the later corporate purchase by Kroger and Edwards of the stock of an entity.

Odom argued in the article that two FBOs could not co-exist at DTS in the environment of declining general aviation activity. Relator alleged the falsity of this assertion in the Complaint. Doc. 33. The article notes that the County would require Odom to show proof of shrinking fuel revenue and numbers showing why it makes sense to have a single FBO. Doc. 57-1. Relator alleged this was not possible and there was no reason to justify having only a single FBO when two FBO locations already existed at DTS. Doc. 33. Importantly, the article notes that if the county commissioners accepted Odom's proposal, "it would then take Odom's case to the FAA." Doc. 57-1. Relator alleged the case was never taken to the FAA. In other words, there was no allegation of fraud in the article. Rather, the article only discussed particular facts but not allegations that constitute the fraud alleged in the Complaint.

Similar to *Palm Beach Cnty. v. Fed. Aviation Adm'r*, 53 F.4th 1318, 1327 (11th Cir. 2022), as alleged in the Complaint, the FAA was never asked to formally analyze the circumstances that occurred at DTS regarding the FBOs. The news articles relied upon by the district court only allude to a possible, future FAA review, something that Relator alleges (and now knows) never happened.

21

The Complaint alleges that false claims continue because Okaloosa County has allowed the exclusive rights to continue. *See, e.g.,* Doc. 33 at ¶¶ 14, 82, 129, 148-49, 155-56, 163-64, 171.72. In *Palm Beach Cnty.*, the Court held that an informal complaint reviewed on incomplete facts did not result in an FAA determination and was not analogous to an FAA approval. The Court went on to emphasize:

> We have seldom, if ever, encountered any other party who has argued that because it has not followed the law for years, it should not be required to do so now.

*Id*. at 1334.

Moreover, Appellees erroneously argue that Mr. Smith was required to have "direct and independent knowledge" under the FCA. Appellees ignore the 2010 amendments to the FCA that radically changed the "hurdle" for relators.

It is undisputed that the post-2010 amended FCA applies to this case. Notwithstanding, Appellees cite a prior version of the FCA and old case law interpreting the pre-2010 version of the FCA to argue that *qui tam* complaints under the False Claims Act must be based on "direct and independent knowledge and must materially add to the information on which the allegations are based."

The current version of the FCA requires:

> (B) For purposes of this paragraph, "original source" means *an individual* who either (i) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions

22

in a claim are based, or (2) *who has knowledge that is* **independent of and materially adds to** *the publicly disclosed allegations or transactions,* and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. §3730(e)(4)(A), (B) (emphases added).

As the plain language of the statue reflects, Relators are no longer required to have "direct knowledge" as argued by Appellees. Relator has knowledge independent of and materially adding to any facts that may have appeared in the news articles.

The Complaint makes clear that the disclosures by Smith to the government included substantially different information than the allegations contained in prior public news reports. Doc. 33 at ¶¶131-135. For example, Smith disclosed that Odom utilized strawmen, Ward and Simmons, to covertly obtain control of Miracle Strip Aviation, later known as Regal Air. *Id*. Moreover, Smith disclosed that Odom used strawmen, Edwards and Kroeger, to obtain control of Regal Air, resulting in an illegal monopoly over the FBOs at DTS. *Id*. There were no prior public reports regarding the use of strawmen by Odom to acquire ownership and control of Miracle Strip Aviation and then Regal Capital and Regal Air. *Id*. In addition, Smith disclosed information he obtained from employees of DTS that had not previously been disclosed. *Id*.

Moreover, Mr. Smith is properly considered an original source.  Doc. 33 at ¶¶ 131-135.  As alleged in the Complaint, Smith obtained independent knowledge of the acts alleged based on his own independent investigation which was aided by his background with DTS, knowledge and access to employees and operations at DTS and unique familiarity with Defendants.  *Id*.  In addition, Smith voluntarily disclosed to the government the information on which the allegations herein are based.  *Id*.  Accordingly, the Complaint is not barred by public disclosure.  *See Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1168 (9th Cir. 2024) ("In sum, the scattered qualifying public disclosures may each contain a piece of the puzzle, but when pieced together, they fail to present the full picture of fraud. In his *qui tam* action, Silbersher filled the gaps by stitching together the material elements of the allegedly fraudulent scheme.").

## IV.    Amendment is Not Futile

Appellant cites to the authorities set forth in the opening brief regarding the request to amend.  To the extent the Court finds pleading deficiencies, amendment would not be futile.  The Complaint already contains sufficient allegations of ongoing fraudulent schemes occurring in different time periods and involving different actors that were not publicly disclosed.  Moreover, Appellant properly set forth the substance of the proposed amendment when requesting leave to

amend. Accordingly, the court should reverse denial of Appellant's request to amend.

Respectfully submitted this 29th day of February 2024.

/s/ Elizabeth C. Billhimer
**ELIZABETH C. BILLHIMER**
Florida Bar No. 0121986
CLARK PARTINGTON
4100 Legendary Drive, Ste. 200.
Destin, Florida 32541
(850) 650-3304 telephone
(850) 650-3305 facsimile
ebillhimer@clarkpartington.com
ldunlap@clarkpartington.com
pabbott@clarkpartington.com
*Attorney for Robert V. Smith*

## CERTIFICATE OF COMPLIANCE AS TO WORD COUNT

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5551 words, excluding the elements of the brief exempt by 11th Cir. R. 32-4.

/s/ Elizabeth Billhimer
ELIZABETH BILLHIMER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic mail via the Court's transmission of the Notice of Electronic Filing to the following, this 29th day of February 2024:

A. BENJAMIN GORDON, III
Anchors Gordon, P.A.
2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, FL 32547
bgordon@anchorsgordon.com
aizzo@anchorsgordon.com
cyndi@anchorsgordon.com
mary@anchorsgordon.com

SARAH WILBANKS
NATHANIEL H. HUNT
PETER J. KIRSCH
Kaplan Kirsch & Rockwell LLP
1675 Broadway, Suite 2300
Denver, CO 80202
swilbanks@kaplankirsch.com
nhunt@kaplankirsch.com
pkirsch@kaplankirsch.com
**COUNSEL FOR DEFENDANT**
**JAY A. ODOM**

GREGORY T. STEWART
LYNN M. HOSHIHARA
KERRY A. PARSONS
Nabors, Giblin & Nickerson, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
(850) 224-4070
(850) 224-4073 Facsimile
gstewart@ngnlaw.com
lhoshihara@ngnlaw.com
kparsons@ngnlaw.com
legal-admin@ngnlaw.com
**COUNSEL FOR DEFENDANT**
**OKALOOSA COUNTY, BOARD OF COUNTY COMMISSIONERS**

FLORIDA ATTORNEY GENERAL SERVICE

U.S. ATTORNEY SERVICE – NORTHERN DISTRICT OF FLORIDA

**And by regular U.S. mail to:**

CHRISTOPHER A. KNIGHT
Office of the Attorney General
State of Florida
PL-01 The Capitol
Tallahassee, FL  32399-1050

And

JIMMY PATRONIS, Chief Financial Officer
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL  32399


And

DAVID M. SOBOTKIN
Trial Attorney
U.S. Department of Justice
Civil Division, Fraud Section
Post Office Box 261
Ben Franklin Station
Washington, D.C. 20044
**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

*/s/ Elizabeth C. Billhimer*
**ELIZABETH C. BILLHIMER**